UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGELA HAMPTON,            )
                           ) CASE NO. C13-0806-RSM-MAT
    Plaintiff,             )
                           )
    v.                     ) REPORT AND RECOMMENDATION
                           ) RE: SOCIAL SECURITY DISABILITY
CAROLYN W. COLVIN, Acting  ) APPEAL
Commissioner of Social Security, )
                           )
    Defendant.             )
_____)

Plaintiff Angela Hampton proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, the Court recommends this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1966.[1] She completed at least the seventh grade,[2]

---

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

attending special education classes (AR 34, 186), and previously worked as a bill collector, stock clerk, and front desk receptionist (16, 196).

Plaintiff filed applications for SSI and Disability Insurance Benefits (DIB) in August 2009, alleging disability since January 1, 1999.[3] (AR 156-65.) Her applications were denied initially and on reconsideration, and she timely requested a hearing.

Plaintiff failed to appear at a hearing scheduled by ALJ Glenn Meyers to occur on April 28, 2011. At that hearing, counsel for plaintiff noted she had discussed with plaintiff amending her onset date to April 1, 2011, based on plaintiff's receipt of unemployment benefits up until that date, and dismissing the DIB application, given that the amended onset date would fall after the date last insured. (AR 55-56.) Counsel for plaintiff subsequently confirmed in a letter that plaintiff had received unemployment benefits from January 2011 through March 2011. (AR 242; *see also* AR 175.) After a finding of good cause for plaintiff's failure to appear at the first hearing, the ALJ held a second hearing on September 8, 2011, taking testimony from plaintiff and a vocational expert. (AR 24-51.) On October 18, 2011, the ALJ rendered a decision finding plaintiff not disabled. (AR 9-18.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on March 13, 2013 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

---

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

2 Plaintiff has given different accounts as to her level of schooling, indicating on various occasions she completed either the seventh, eighth, or ninth grades. (*See*, *e.g.*, AR 34, AR 186, AR 351, 375.)

3 The ALJ and the parties assert an original alleged onset date in January 2002, while the applications themselves identify a date in January 1999. (AR 156, 163.)

# JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

# DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since April 1, 2011, the amended alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's pain in the cervical and lumbar spine, major depressive disorder, and panic disorder without agoraphobia severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff had the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b), limited to simple repetitive tasks, and unable to perform work requiring public contact or more than occasional contact with supervisors and coworkers. With that RFC, and with the assistance of a vocational expert, the ALJ found plaintiff unable to perform her past relevant work as a bill collector, stock clerk, and front desk receptionist.

If a claimant demonstrates an inability to perform past relevant work or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With consideration of the Medical-Vocational Guidelines and the testimony of the vocational expert, the ALJ found jobs existed in significant numbers in the national economy plaintiff could perform, such as motel/hotel housekeeper and production assembler. The ALJ, therefore, concluded plaintiff was not under a disability through the date of the decision.

This Court's review of the final decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the final decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing her credibility, in assessing physicians' opinions, and at step five. She requests remand for payment of benefits or, in the alternative, for further proceedings. The Commissioner maintains the ALJ's decision has the support of substantial evidence and should be affirmed.

### Physicians' Opinions

Plaintiff argues the ALJ erred in considering the opinions of examining psychologist Dr. Victoria McDuffee. She also argues error in relation to the opinions of State agency consultants Drs. Alex Fisher and Kent Reade.

A.   Dr. Victoria McDuffee

The ALJ gave reduced weight to the opinion of examining psychologist Dr. Victoria McDuffee, who examined plaintiff on June 15, 2010 and May 16, 2011. (AR 375-84, 473-78.) He noted that, in June 2010, while assessing plaintiff with a Global Assessment of Functioning (GAF) score of 35 to 40, Dr. McDuffee "also advised that mental health intervention 'would likely improve' the claimant's symptoms 'sufficiently [for her] to join the workforce'." (AR 16 (citing AR 381).) The ALJ stated: "In other words, with appropriate treatment such as counseling and medications, the claimant could return to work." (*Id*. (citing 20 C.F.R. § 416.930 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work[.]"))  The ALJ also stated that, in May 2011, Dr. McDuffee noted that "despite the claimant's essentially life long depression, as shown by her history and presentation, she had sustained employment for a four-year period in the past." (*Id*. (citing AR 475).)

Because the record contained opinions contradictory to those of Dr. McDuffee, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for the rejection of her opinions. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

REPORT & RECOMMENDATION
PAGE -5

In this case, it can be said that the ALJ sufficiently addressed the June 2010 opinions of Dr. McDuffee. In that evaluation, Dr. McDuffee noted that plaintiff was not receiving mental health services, opined that a mental health intervention would "likely improve her [symptoms] sufficiently to join the workforce[,]" noted plaintiff "may benefit from participation with [Division of Vocational Resources (DVR)] as a gradual transition to working[,]" and recommended a plan of care including individual therapy, with treatment monitoring, and a DVR referral. (AR 381.) The, ALJ, therefore, drew a reasonable inference in relation to this evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The ALJ's findings will be upheld 'if supported by inferences reasonably drawn from the record . . . .'") (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)).

However, plaintiff demonstrates reversible error in relation to the ALJ's consideration of Dr. McDuffee's later, May 2011 evaluation. In that evaluation, Dr. McDuffee's consideration of whether or not plaintiff's mental health would likely improve with intervention was not clear. She checked both "yes" and "no" in response to this question, and explained her response as follows: "Her history and presentation suggest her depression has been a life long struggle. Her employment history is minimal with exception of one period in 1998 where she sustained employment for 4 years. Her entire family suffers with mental illness – severe depression, bipolar, anxiety." (AR 475.) The ALJ's reading of this statement, without acknowledgement that Dr. McDuffee described plaintiff's employment history as otherwise minimal and without consideration of the ambiguous nature of the opinion as to mental health intervention generally, was not reasonable.

The ALJ further failed to provide any other reasoning in relation to the opinions of Dr.

REPORT & RECOMMENDATION
PAGE -6

McDuffee.  (*See* AR 16.)  The ALJ's decision, therefore, contains no specific and legitimate reasons for rejecting Dr. McDuffee's May 2011 opinions.  As such, this matter should be remanded for further consideration of the opinions of Dr. McDuffee.  While Dr. McDuffee does not serve as plaintiff's treating physician, the ALJ should consider the need for clarification or further development of the record in relation to the opinions of this physician. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) ("[T]he ALJ should not be 'a mere umpire' during disability proceedings. Rather, the ALJ has 'a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'") (quoted sources omitted).  *Cf.* 20 C.F.R. § 416.912(e) (addressing obligation to recontact treating source in the face of a conflict or ambiguity), and *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoted source omitted).

This error does not argue in favor of an award of benefits.  As reflected above, Dr. McDuffee's May 2011 opinion as to mental health intervention is not clear.  Moreover, this evaluation reflects that plaintiff was not, at that time, taking any medication or receiving any mental health services.  (AR 473, 475.)  A remand for further administrative proceedings would serve a useful purpose given the existence of outstanding issues requiring resolution and the absence of support for a conclusion the ALJ would be required to find plaintiff disabled if he considered the evidence.  *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

B.     Dr. Alex Fisher and Dr. Kent Reade

Non-examining physician Dr. Fisher assessed plaintiff in November 2009 (AR 283-96,

458-61) and Dr. Reade affirmed Dr. Fisher's opinions in March 2010 (AR 346). The ALJ found plaintiff's mental impairment limitations reliably assessed by these State agency consultants, explaining:

> Dr. Fisher reported that the clamant is able to understand, remember, and carry out simple instructions. She would benefit from minimal social interaction in a predictable work environment. Dr. Reade agreed. The opinions of Drs. Fisher and Reade are consistent with the record as a whole and I give them significant weight.

(AR 15 (citing AR 346, 460, and Social Security Ruling (SSR) 96-6p ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.").)

Plaintiff notes that the opinions of these physicians predated her amended alleged onset date, and argues the RFC limitation to "occasional" contact with supervisors and coworkers does not reasonably account for the opinions of Drs. Fisher and Reade that she should have only "minimal" social interaction in the workplace. (AR 13, 460.) She asserts that, in the Social Security context, occasional is defined as up to one third of the workday. *See* SSR 96-9p (defining, in relation to sedentary work, "occasionally" as "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.") Plaintiff also argues the ALJ failed to address the opinions of these physicians that she required a predictable work environment. (*See* AR 460.)

Drs. Fisher and Reade opined plaintiff "would benefit from a predictable work environment." (AR 460.) As the Commissioner avers, the ALJ reasonably accounted for this opinion by limiting plaintiff to simple and repetitive tasks. (AR 13.)

Nor does plaintiff establish reversible error in relation to social interaction. "[T]here is

REPORT & RECOMMENDATION
PAGE -8

no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Indeed, the "final responsibility" for decisions such as the assessment of an individual's RFC is reserved to the Commissioner. SSR 96-5P. In this case, while Drs. Fisher and Reade found plaintiff should have "minimal social interaction", the ALJ found plaintiff should have no public contact and only occasional contact with supervisors and co-workers. (AR 13, 460.) The ALJ's reading of the opinions of Drs. Fisher and Reade can be deemed rational. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

However, the Court finds a different issue, not addressed by either party, troubling. The Mental RFC Assessment (MRFCA) signed by Dr. Fisher on November 2009 and affirmed by Dr. Reade in March 2010 contains a detailed discussion of a February 2008 evaluation of plaintiff in which she "reported possible memory problems related to an overdose of methamphetamines[]" and "endorsed an extensive history of polysubstance abuse." (AR 460.) Dr. Fisher stated:

> We really have no idea if [drug and alcohol abuse (DAA)] is a current factor or not. For rating purposes we are assuming that it is not, but that assumption is not made with a great deal of confidence, given her [history] and recent report to SeaMar Urgent Care staff (9/09) that she has no [history] of DAA.

(*Id.*)

The inclusion of this information is puzzling given the absence of the discussed

REPORT & RECOMMENDATION
PAGE -9

February 2008 evaluation in the record. If this evaluation exists, it should be included in the record and considered. The content of this evaluation as described in the MRFCA appears to raise outstanding issues as to DAA and credibility requiring resolution, particularly in light of the fact that plaintiff has repeatedly denied any history of illicit drug use or prescription misuse in her lifetime. (*See*, *e.g.*, 40, 322, 430, 465.) On the other hand, if no such record exists, the ALJ should consider any impact on the assessment of the opinions of Drs. Fisher and Reade. This issue, therefore, serves as an additional basis for remanding this matter for further administrative proceedings.

## Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ found that, while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent

inconsistent with the assessed RFC. Plaintiff argues the ALJ failed to provide clear and convincing reasons in support of this conclusion.

A.  Unemployment Benefits

Although not addressed by either party, and not included in the ALJ's step four assessment, the ALJ first identified plaintiff's receipt of unemployment benefits as raising "questions of the credibility of her allegations of being unable to work." (AR 12.) He nonetheless gave her the "benefit of the doubt," and proceeded to the remaining steps of the sequential evaluation. (*Id.*) However, because it does not appear the record establishes plaintiff held herself out as available for full-time work in filing for unemployment benefits, the ALJ's reliance on this factor cannot be said to have the support of substantial evidence. *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("While receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime . . . the record here does not establish whether Carmickle held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations. Thus, such basis for the ALJ's credibility finding is not supported by substantial evidence."). On remand, if the ALJ again considers this factor in relation to plaintiff's credibility, he should only do so with consideration of whether or not plaintiff held herself out as available for full-time work.

B.  Daily Activities

In addressing plaintiff's credibility at step four, the ALJ found her daily living activities inconsistent with her complaints: "As noted below, an examining psychologist reported in August 2009 that the claimant shops, does her laundry, does housecleaning, drives herself to

appointments, handles money appropriately, and takes her medications as prescribed." (AR 14 (citing AR 355).) He elaborated as follows:

> As noted above, the claimant said that she has panic attacks several times a week, feels overwhelmed, and is unable to walk even half a block due to her pain. Yet, she reported on March 1, 2010, that she drives, goes grocery shopping twice a month (her son helps), and pays her own bills. Despite her various complaints, including pain and fatigue, the claimant can concentrate and persist to do reading every day, as well as follow the plots of television programs.

(*Id.* (citing AR 217-18).)

Plaintiff argues the ALJ both seriously mischaracterized and drew unreasonable inferences from the exhibits relied upon in support of his conclusion. She notes that the August 2009 report from examining psychologist Dr. Wayne Dees is dated more than one and a half years before the amended alleged onset date of April 2011, reflects plaintiff's report that she sat in her room and watched TV all day, did not cook, ate fast foods, shopped when she had to, cleaned her house, and had "no energy or desire to do anything[,]" and also reflects Dr. Dees' opinion that plaintiff was seriously limited. (AR 351-54.) Plaintiff describes the March 2010 function report as dated only some six months later and as providing clarifications as to the limited nature of her daily activities, such as, *inter alia*, the fact that she sat on the couch most of the day watching television and "can't clean [her] house." (AR 214-22.) She avers that, although she attributed many of these limitations to her physical pain, this does not change the fact that she was far less active than the ALJ claimed.

Plaintiff's criticism based on the dates of the exhibits utilized by the ALJ is not persuasive. As the ALJ acknowledged in the decision, much of the evidence of record is dated prior to the amended alleged onset date of April 1, 2011. (AR 15.) Given that that date

REPORT & RECOMMENDATION
PAGE -12

preceded the ALJ's decision by less than seven months, the reliance on earlier dated exhibits was entirely reasonable. It should also be noted that the only explanation for the amendment of the alleged onset date reflected in the record consists of the fact that plaintiff received unemployment benefits prior to that date. Plaintiff, at hearing, testified her mental impairments, while progressively worsening, were longstanding. (AR 44.)

The Court further notes that there are "two grounds for using daily activities to form the basis of an adverse credibility determination[,]" including (1) whether the activities contradict the claimant's testimony and (2) whether the activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (cited source omitted). In this case, the ALJ appropriately relied on evidence that plaintiff's daily activities contradicted her testimony. While the activities pointed to by the ALJ appear quite minimal, the ALJ did provide specific examples of contradiction. He, for example, contrasted plaintiff's purported panic attacks and inability to walk even half a block with the fact that she drives and goes grocery shopping, and her alleged inability to concentrate with her daily reading. As such, the ALJ's reasoning as to daily activities would not independently warrant remand. However, on remand, the ALJ should take the opportunity to consider any additional evidence as to plaintiff's activities.

C. <u>Exaggeration, Contradictory Evidence, and Conservative Treatment</u>

The ALJ next, after describing the medical evidence of record, stated the following:

> In summary, the claimant tended to exaggerate her functional limitations and was not fully credible. The few sources in the medical record who have stated an opinion of the claimant's physical capacities agreed that she could do light work. Magnetic resonance imaging of the claimant's spine on June 24, 2011, was relatively benign. The claimant has generally had conservative treatment

>for her complaints of back and neck pain. She has had limited treatment for her depression and anxiety. Dr. McDuffee stated that with such treatment, the claimant "would likely improve . . . sufficiently to join the workforce". Viewing the record as a whole, including the testimony, I find the claimant has the [RFC] as found above.

(AR 16.) This reasoning reveals that the ALJ's credibility assessment also relied on evidence of exaggeration of limitations, *Tonapetyan*, 242 F.3d at 1148 (ALJ appropriately considers evidence of a tendency to exaggerate), contradictory evidence in the record, *id.* (ALJ appropriately considers inconsistency with the evidence); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."), and evidence of conservative and limited treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Plaintiff raised no arguments in relation to the ALJ's finding as to symptom exaggeration or contradictory medical evidence in her opening brief. In her reply brief, plaintiff states that the ALJ directed his observations as to limited physical findings to her back and neck pain, and that she is not contesting the ALJ's physical RFC finding. It would remain, however, that the ALJ properly identified a reason for finding plaintiff less than fully credible in pointing to evidence contradicting her claim. Also, to the extent the ALJ's reasoning is construed as directed towards an absence of supportive objective evidence, such consideration is proper so long as the ALJ provides other reasons in support of his credibility assessment. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical

evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR 96-7p (same).

Finally, the Court addresses the ALJ's consideration of conservative and limited treatment. An ALJ may properly rely on evidence of conservative treatment in discounting the credibility of a claimant's testimony. *Parra*, 481 F.3d at 750-51. *See also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). An ALJ may further "properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012).

In this case, the ALJ relied on evidence of limited mental health treatment and evidence supporting the conclusion that, if plaintiff received such treatment consistently, she would be able to work. The record contains evidence supporting the ALJ's conclusion. (*See*, *e.g.*, AR 326 (April 1, 2009 record noting plaintiff "has not been taking [any medication for her depression] for almost one year."), AR 355 (Dr. Dees, in August 2009, opined that "Mental health counseling in conjunction with medications would likely improve her ability to return to work in some capacity."), AR 381 (Dr. McDuffee's June 2010 opinion as to mental health intervention), and AR 473 (plaintiff told Dr. McDuffee in May 2011 that she was not taking any medication and reported intermittent participation in counseling).)

However, given the above-described error in relation to Dr. McDuffee, and the outstanding issue as to the opinions of Drs. Fisher and Reade, the ALJ should further consider this reasoning and the evidence on remand. In so doing, the ALJ should consider, as argued by

REPORT & RECOMMENDATION
PAGE -15

plaintiff, any evidence plaintiff had reasons for failing to seek or pursue treatment, such as an absence of health insurance. *See* Social Security Ruling (SSR) 96-7p (ALJ should not draw inferences from failure to seek or pursue treatment without first considering explanations for that failure, including an inability to afford treatment); SSR 82-59 (failure to follow prescribed treatment may be justifiable where claimant unable to afford). *See also Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

<u>Step Five</u>

Plaintiff argues the ALJ failed to meet his burden at step five based on the improperly rejected testimonial and medical evidence, as discussed above. Because this matter should be remanded for the reasons stated above, the ALJ should reconsider plaintiff's claim at step five as may be necessitated by further consideration of the medical record and plaintiff's credibility.

Plaintiff also argues the ALJ erred in finding her capable of performing work as a motel/hotel housekeeper and production assembler given the assessed limitation to only occasional contact with supervisors and coworkers. She bases this argument on testimony from the vocational expert (VE) elicited by her attorney at hearing. The VE responded in the affirmative when asked whether housekeepers "ever" worked in teams of two, and also testified that production assemblers "[o]ccasionally" worked in teams or a team-like setting. (AR 46-47.) However, the mere fact that some housekeepers have worked in teams of two and that

production assemblers can be said to occasionally work in teams, does not undermine the ALJ's reliance on the testimony of the VE. That is, it remains that the VE testified an individual who could have a maximum of occasional contact with supervisors and coworkers could perform the positions of motel/hotel housekeeper and production assembler, citing to the relevant job codes in the Dictionary of Occupational Titles (DOT).

The Court does, however, note error in the ALJ's failure to confirm whether the VE's testimony was consistent with the DOT. (*See* AR 44-49.) Pursuant to SSR 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). Any error in this regard would be harmless if plaintiff failed to identify an actual conflict with the DOT. *See Rushing v. Astrue*, No. 08-36001, 2009 U.S. App. LEXIS 28292 *4 (9th Cir. Dec. 23, 2009) (failure to ask VE regarding consistency with the DOT harmless where plaintiff did not allege the VE's testimony was actually inconsistent with the DOT) (citing *Massachi*, 486 F.3d at 1153-54 [n. 19] ("This procedural error could have been harmless, were there no conflict, or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts, as in Johnson. Instead, we have an apparent conflict with no basis for the vocational expert's deviation."))

In this case, plaintiff identifies no conflict with the DOT based on a limitation to only occasional contact with coworkers or supervisors. However, because this matter is being remanded for further consideration of plaintiff's claim, the Court finds it prudent to advise the

ALJ to consider, as necessary, the question of consistency with the DOT.[4]

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

DATED this <u>24th</u> day of December, 2013.

Mary Alice Theiler
Chief United States Magistrate Judge

---

[4] For example, while the Court does not find it appropriate to reach a conclusion on this issue given the absence of argument, the ALJ may want to consider whether the RFC limitation to no public contact implicates reliance on the housekeeping position at step five. *See*, *e.g.*, DOT 323.687-014 (describing housekeeping work as entailing performance of "any combination" of a number of duties, including "render[ing] personal assistance to patrons[.]"), and *Green v. Colin*, No. C13-0749-JCC-MAT, Report & Recommendation at 6-8 (W.D. Wash. Nov. 18, 2013) (discussing relevant case law on this issue).